V. A. CAVEY, Executor of the Estate of JOSEPH PICKETT, Appellant,
    v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, a Corporation.—55 S. W. (2d) 438.

Division One, December 20, 1932.

*Randolph & Randolph* for appellant.

*Mayer, Conkling & Sprague* for respondent.

GANTT, J.—Action to recover $10,000 for the alleged wrongful death of Joseph Pickett, seventy-five years of age and almost deaf. He collided with a street car of defendant in St. Joseph and suffered injuries from which he died. The "vigilant watch" ordinance of said

city is set forth in the petition, but the cause of action pleaded and relied upon is violation of the humanitarian rule. The answer is a general denial with a plea of contributory negligence.

At the close of the evidence on the part of plaintiff, the court indicated a directed verdict for defendant. Thereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside. The motion to set aside the nonsuit was overruled, and plaintiff appealed. The question presented is whether or not there was substantial evidence of a violation of the humanitarian rule in that defendant negligently failed to stop the car when plaintiff was in peril.

The only evidence on the question was the testimony of Henry McDowell and Leslie Bennet. They testified in substance as follows:

Lake Avenue runs north and south and is intersected by Texas and Arizona Streets. The collision occurred on Lake Avenue between six and seven P. M., on February 23, 1929, and about the middle of the block between said streets. It was getting dark, had been raining and the street and rails were wet. The street car was lighted by head lights and the usual lights inside the car. A few minutes before the collision McDowell drove a truck, with lighted head lights, on to Lake Avenue, about three blocks north of Texas Avenue, and proceeded south on the west side of Lake Avenue. He was accompanied by Leslie Bennet, who was seated on the right side of the cab. He proceeded south in front of a street car, until they reached about the middle of the block between Texas and Arizona Streets. He then drove the truck, twelve to fifteen feet in length, toward the west and stopped about six inches from the curb. At the time, deceased was standing on the sidewalk on the west side of Lake Avenue and "half way" between the truck and an automobile parked six or eight feet in front of the truck. As McDowell started to alight from the truck, he heard the approaching street car near the rear of the truck and heard the ringing of the car bell. At this time deceased stepped from the curb and proceeded, "stooped over with his head down," to walk at a medium gait in the direction of a little north of east. McDowell's attention was directed to the approaching street car which had reduced its speed to about six miles an hour. It continued to ring the bell. He did not again see deceased until he (deceased) was within two feet of the street car. At that time the fender and the double front doors of the car had passed him and "he was out in the clear." But he "stepped right into" the north casing of the street car door and was knocked to the pavement. The street car moved twenty feet after the collision and stopped. It could have been stopped within eight or ten feet. It is about sixteen feet from the west curb to the west rail of the track, and it was about ten feet from the east side of the truck to the street car track.

■■ The statement of facts rules the question. On approaching and passing the cars parked on the west side of the street, the motor-

man moved the street car slowly and continuously rang the bell to warn persons in and about the parked cars. And there was no evidence tending to show that the motorman knew deceased was deaf. But he must be charged with having seen deceased emerge from between the truck and automobile and with having observed that he was walking "stooped over and with his head down." From this, plaintiff argues that the motorman knew, or should have known, that deceased was oblivious and would collide with the car unless it was stopped. We do not think so. Deceased must have been four or five feet from the street car as the fender and front doors were passing. If so, the motorman at that time observed him in a position of safety and there was nothing in his conduct to indicate that he would walk "right into the car." The fact that he was walking "stooped over and with his head down" did not so indicate. On the contrary, the northeasterly direction in which deceased was walking indicated that he intended to walk northward and between the moving street car and the truck. We think, under the facts and circumstances in evidence, the motorman could assume that deceased saw the lighted street car and heard the sound of the ringing bell. We find no facts or circumstances in evidence authorizing a submission of the case to the jury.

The motion to set aside the nonsuit was well ruled, and the judgment should be affirmed. It is so ordered. All concur.